Danny H. STEVENS, et al.,
Respondents,

v.

Randy LEVY, et al., Appellants,

Norman Kenneth, et al., Defendants.

No. C9–89–669.

Court of Appeals of Minnesota.

Nov. 28, 1989.

---

Marshall H. Tanick, Michael J. McNamara, Mansfield & Tanick, Minneapolis, for respondents.

Phillip R. Krass, Lachlan B. Muir, Krass & Monroe Chartered, Shakopee, for appellants.

Arthur D. Walsh, A.D. Walsh & Associates, Minneapolis, for defendants.

Heard, considered and decided by RANDALL, P.J., FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

Randy Levy and Rose Productions appeal a district court order requiring them to post a $200,000 bond as a condition for vacating a preliminary attachment. We agree that, on these facts, the court lacks authority to impose the bond and reverse and remand to the district court.

## FACTS

This case involves the telecasting rights to the June 27, 1988 Mike Tyson–Michael Spinks heavyweight championship boxing match. The underlying controversy centers on allegations of fraud and breach of a telecasting contract. The overlaying controversy is whether the district court erred in refusing to vacate a preliminary attachment of funds which cable television companies intended to release to Rose Productions and Randy Levy.

Rose Productions (Rose), a partnership between Randy Levy and Minnesota Concert Co., Inc., owned exclusive telecasting rights for the Tyson–Spinks boxing match in an eight-state area, including Minnesota. According to the affidavits supporting the preliminary injunction, Rose assigned all of its broadcasting rights on May 27, 1988, to an entity identified as the Kenneth Group. On June 16, 1988, Rose entered into a contract with R & R Productions, Inc. in which Rose purported to grant R & R exclusive permission to show the fight on closed circuit television at International Market Square in Minneapolis. Rose represented in this contract that it owned exclusively the right to telecast the fight in Minnesota.

On June 23, 1988, the Kenneth Group granted Rogers Cable Company and Continental Cable Company permission to telecast the Tyson–Spinks fight. The cable companies agreed to pay the Kenneth Group 50% of their proceeds. For undisclosed reasons, the Kenneth Group directed the cable companies to send this payment to Rose.

On June 27, 1988, the fight took place; Mike Tyson won in 91 seconds. The cable companies that telecast the fight made substantial profits. R & R also televised the fight, but its venture was a failure. Boxing fans apparently preferred to watch the fight on cable television instead of attending the closed circuit viewing at International Market Square.

R & R and its sole shareholder, Danny Stevens, sued Rose and Levy, alleging fraud and breach of contract. Simultaneously, R & R and Stevens applied for a preliminary order of attachment, seeking attachment of the fight proceeds which the two cable companies had agreed to pay Rose. On July 26, 1988, the district court issued the preliminary attachment order, conditioned on R & R and Stevens posting a $50,000 bond. The sheriff executed the attachment order and seized the proceeds even though no bond was posted.

On August 2, 1988, the court held a hearing at which Rose and Levy were permitted to challenge the attachment. The next day, the court denied the permanent attachment and, conditioned on Rose and Levy's posting a $200,000 bond, ordered vacation of the preliminary attachment. Rather than posting the bond, Rose and Levy moved to vacate the attachment. After denial of their motion, Rose and Levy appealed.

## ISSUE

Did the district court err in conditioning the vacation of the preliminary attachment on defendant's posting a bond after denying a permanent attachment?

## ANALYSIS

Whether an attachment order is preliminary or permanent, it must be vacated by the district court if, after an evidentiary hearing at which both sides are present, the standards set forth in Minn.Stat. § 570.026, subd. 3 (1988) are not met. Minn.Stat. §§ 570.025, subd. 5 (1988) and 570.026. Minn.Stat. § 570.026, subd. 3 provides:

> Subd. 3. Standards for order. An order for attachment may be issued only if the claimant has demonstrated the probability of success on the merits, and the claimant has demonstrated facts that show the existence of at least one of the grounds stated in section 570.02. However, even if those standards are met, the order may not be issued if:
>
> (1) the circumstances do not constitute a risk to collectibility of any judgment that may be entered; or
>
> (2)(i) respondent has raised a defense to the merits of the claimant's claim or has raised a counterclaim in an amount equal to or greater than the claim and the defense or counterclaim is not frivolous; and
>
> (ii) the interests of the respondent cannot be adequately protected by a bond filed by the claimant pursuant to section 570.041 if property is attached; and
>
> (iii) the harm suffered by the respondent as a result of seizure would be greater than the harm which would be suffered by the claimant if property is not attached.

In its August, 1988, order issued immediately after the hearing, the district court did not make specific findings or give reasons for denying the permanent attachment. In a February, 1989, order the court provided findings which supported the preliminary attachment order but reiterated its refusal, "based upon Rose/Levy's argument," to issue the permanent attachment order. The court also found that the interests of the respondent cannot be adequately protected by a bond filed by the claimant pursuant to section 570.041 if property is attached. Minn.Stat. § 570.026, subd. 3(2)(ii).

Taking into account R & R and Steven's inability to post a bond, the court ordered vacation of the preliminary attachment, contingent on Rose and Levy's posting a $200,000 bond. In issuing this order, the court relied on subdivision 4 of section 570.026:

> Subd. 4. Protection of claimant. *If the claimant makes the showing prescribed by subdivision 3* but the court nevertheless determines that an order of attachment should not be issued for the reasons set forth in subdivision 3, clause (2), the court shall enter a further order protecting the rights of the claimant to the extent possible. The order may require that the respondent post a bond in an amount set by the court, that the respondent make the property available for inspection from time to time, that the respondent be restrained from certain activities, including, but not limited to, selling, disposing, or otherwise encumbering property, or any other provision the court may deem appropriate.

(Emphasis supplied.)

Initially, we note that the court's findings do not clearly state that the claimants, R & R and Stevens, have made the showing prescribed by subdivision 3. Assuming for the purpose of analysis that the court believed that subdivision 3 had been satisfied, the evidence does not support the court's finding that "the interests of the respondent cannot be adequately protected" by a Minn.Stat. § 570.041 bond.

The district court apparently grounded its finding upon a determination that R & R and Stevens were financially unable to post the $50,000 bond. This is an unusual reading of the statute that is not supported by its language and is contrary to its context. The financial ability of the claimant is not a consideration under subdivision 3(2)(ii). This provision addresses whether the bond, if filed, can protect the respondent's interests, not whether the claimants have the resources to file the bond.

The evidence indicates that a $50,000 bond would adequately protect the interests of Rose and Levy. This is not a situation where attachment will cause irreparable harm. The monetary damages caused by the attachment can be adequately protected against by a bond and the Subdivision 4 protections do not apply.

Minn.Stat. § 570.026, subd. 4, has been incorrectly relied on as authority for imposing the bond, and the court's order requiring Rose and Levy to post a bond must be reversed. Because we are in doubt on whether the court believed the standards of Minn.Stat. § 570.026, subd. 3 have been met, we remand for the court to determine in light of this holding whether to grant or deny the permanent attachment. Any attachment order, however, must first require R & R and Stevens to post the bond required by Minn.Stat. § 570.041. If this bond is not posted within a reasonable time, the attachment of Rose and Levy's assets must be vacated. *See Blake v. Sherman*, 12 Minn. 420 (Gil. 305). If the court vacates the attachment, the seized funds should be released to the cable companies, the entities from which the funds were initially taken.

## DECISION

The district court's order conditioning vacation of attachment upon the posting of a bond by the appellants is reversed. We remand for further proceedings.

Reversed and remanded.